OPINION OF THE COURT
J. Robert Lynch, J.
By CPLR article 78 proceedings, the petitioner seeks to be reinstated in the respondent county’s employ as a senior .veteran’s service officer, with back pay, interest, and other-benefits retroactive to May 15, 1980, and to have his appointment to the position declared permanent.
On February 16, 1977, the petitioner was given a provisional appointment as a senior veteran’s service officer. He ultimately took competitive civil service examinations for both the positions of veteran’s service officer and senior veteran’s service officer and, on March 14, 1980, eligibility lists for these positions were released. The petitioner ranked first on each list.
*873 In January, 1980 the respondent Boehlert had taken office as Oneida County Executive and, by March 20, he had met with Fred Arcuri who was holding over into the Boehlert administration as director of veteran’s services. Boehlert told Arcuri that he intended to replace him as director but wanted him to stay on in the veteran’s agency as second in command.
On March 20, 1980 Boehlert appointed Charles Ferro as director, effective May 1. This appointment was confirmed by the Board of County Legislators. However, by May 1, 1980, Ferro had not qualified to act as director and, in fact, never did qualify.
On April 7, 1980, Boehlert was notified that Arcuri had to go into the hospital immediately for open heart surgery and would not be returning to work until sometime in the summer. Arcuri is still on sick leave.
By letter dated May 1,1980 from Boehlert, the petitioner was notified that “ [w] ith the appointment of a new Director of Veteran’s Services it becomes necessary to make changes within the Veteran’s Department. It will therefore be necessary that your service be terminated as of May 15, 1980”.
With Ferro not having qualified for the office, Harold McLeod was appointed director of veteran’s services effective May 29, 1980 and as of that same date Arcuri became deputy director. Arcuri was paid as director up to May 28, 1980, although at his former rate of pay and not at the new rate established as May 1, 1980 by the County Board of Legislators.
The petitioner argues that his dismissal was illegal because only the administrative head of a department can terminate an employee within the department. He argues that when he received his notice of termination Arcuri was 'director of veteran’s services. Accordingly, he insists that only Arcuri had the authority to terminate him.
The County Executive is granted a general power and duty “to supervise, direct and control the administration of all departments of the County Government” (Oneida County Charter, § 301). He is also authorized to “appoint *874 the heads of every County department and office * * * not administered by any elected official” (Oneida County Charter, § 311; Oneida County Administrative Code, § 311). “All other officials and employees of each department or other administrative unit shall be appointed by the head thereof” (Oneida County Charter, § 311). Under the authority of this provision, the petitioner received his provisional appointment as senior veteran’s service officer from the director of veteran’s services. Since the power to remove an appointee is an incident of the power to appoint him, the power to summarily dismiss does not lie with anyone other than the appointing officer (Mark v The Mayor, 37 Misc 371, 374; 48 NY Jur, Public Officers and Employees, § 246; 20 CJS, Counties, § 108, subd b). The respondent Boehlert, then, in his personage as County Executive, had no authority to terminate the petitioner.
The respondents argue, however, that during Arcuri’s illness the respondent Boehlert had in effect appointed himself acting director of veteran’s services and in that personage had authority to dismiss the petitioner. They also argue that Arcuri’s tenure was terminated by the County Executive’s temporary assumption of his duties.
This latter contention is incorrect. Ordinarily department heads appointed by the County Executive do not serve at his pleasure; they serve for a fixed term that expires with the term of the County Executive who appointed them (Oneida County Charter, § 311; Matter of Williams v Bryant, 57 AD2d 717, 718). In a holdover situation, such as is presented here, the department heads continue to serve “until they are legally removed or until their successors are appointed by the County Executive, confirmed by the Board of Legislators, and qualified” (Matter of Williams v Bryant, supra, p 718).
Subdivision h of section 311 of the Oneida County Administrative Code sets forth the procedure for the legal removal of county officers or employees. There is nothing in the record before us that would indicate a resort to this procedure for the removal of Arcuri. Further, the respondents admit that at the time the petitioner was told he was terminated no successor to Arcuri was qualified. We must *875 conclude, therefore, that Arcuri was at that time still director of the department and this is confirmed by the records showing that his compensation through May 28 was for being director. Additionally, although Arcuri was on sick leave at that time, such disability would not serve to create a vacancy in the position (Public Officers Law, § 30; 17 Opns St Comp, 1961, p 448; cf. Sullivan v Whitney, 25 NYS2d 762, 770).
With Ferro not having qualified for the office, Harold McLeod was appointed director of veteran’s services effective May 29, 1980 and as of the same date Arcuri became deputy director. Arcuri was paid as director up to May 28, 1980, although at his former rate of pay and not at the new rate established as of May 1, 1980 by the County Board of Legislators.
The question remains whether the County Executive was free to assume the directorship of veteran’s services during Arcuri’s disability. According to the Oneida County Administrative Code (§311, subd [e]) the administrative head of a department should designate in writing “the order of temporary succession to the duties of administrative head during absence or disability”. The County Law (§401) and the Public Officers Law (§9) contain similar provisions. The respondents contend that the respondent Boehlert could take over because Arcuri had failed to designate an order of succession. The County Law, however, provides that when an administrative head fails to designate his temporary replacement, the senior deputy in the department shall act (§401, subd 3). Thus respondent Boehlert’s attempt to terminate the petitioner was without authority and must be treated as a nullity.
The petitioner claims that upon reinstatement his position should be declared permanent. He claims that when a provisional employee takes the civil service examination and becomes eligible for permanent appointment, the continuance of him in the job confers upon him permanent status (see Civil Service Law, § 65, subd 4; Matter of Smith v Hoyt, 59 AD2d 1058).
The respondents claim that they were free to dismiss the petitioner within two months following the establishment *876 of an eligible, list, or alternatively that the petitioner had to serve a probationary period anew during which he could be freely dismissed. Since the purported termination by respondent Boehlert was invalid, there was no termination within the two-month period.
Since petitioner was continued as a senior veteran’s service officer after he had qualified for a permanent position he would have obtained permanent status on March 14,1980 (Matter of Smith v Hoyt, supra), subject however to completion of a probationary term (Matter of Roulett v Town of Hempstead Civ. Serv. Comm., 71 Misc 2d 477, affd 40 AD2d 611). The applicable period of probation for the petitioner’s position is “not less than 8 nor more than 26 weeks” (former 4 NYCRR 4.5 [a] [1]). A probationary term expires on completion of the minimum period of probation unless the probationer is given written notice that the probationary term will be continued (Matter of Albano v Kirby, 36 NY2d 526; former 4 NYCRR 4.5 [a] [3]). Since the petitioner was not validly dismissed during the eight weeks following March 14, 1980 nor notified that his probationary period was extended, the probation expired, his term became unconditionally permanent and he became entitled to all the protections of the Civil Service Law (Matter of Smith v Hoyt, supra).
The petition must be granted reinstating petitioner to the position of senior veteran’s service officer with all its wages and benefits retroactive to May 15, 1980, less the amount of compensation he may have earned in any other employment or occupation and any unemployment insurance benefits he may have received (see Civil Service Law, § 77).